UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DAVID M. HETLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:13-CV-314 (CEJ) |
| | ) |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court for review of an adverse ruling by the Social Security Administration.

### I. Procedural History

On May 27, 2010, plaintiff David Hetley filed applications for supplemental security income, Title XVI, 42 U.S.C. §§ 1381 *et seq.*, and disability insurance benefits, Title II, 42 U.S.C. §§ 401 *et seq.*, with an alleged onset date of September 10, 2009. (Tr. 94-95; 232-35). After plaintiff's applications were denied on initial consideration (Tr. 74-79), he requested a hearing from an Administrative Law Judge (ALJ). (Tr. 70).

Plaintiff and counsel appeared for a hearing on July 6, 2011. (Tr. 282-313). The ALJ issued a decision denying plaintiff's applications on August 10, 2011 (Tr. 13-21), and the Appeals Council denied plaintiff's request for review on January 2, 2013. (Tr. 3-5). Accordingly, the ALJ's decision stands as the Commissioner's final decision. See 42 U.S.C. § 405(g).

### II. Evidence Before the ALJ

### A. Disability Application Documents

In his Disability Report (Tr. 137-47), plaintiff listed his disabling conditions as gout, arthritis in his shoulders and knees, and gallbladder problems. In the past, plaintiff worked as a forklift driver for a variety of warehouses and trucking businesses. Plaintiff reported taking steroids for arthritis and Vicodin for pain. In his updated disability report submitted on appeal (Tr. 98-107), he wrote that his arthritis had worsened and he had gained weight from his medication. He listed his current medications as Mobic, Prednisone, Allopurinol, and Uloric for gout, and Aleve for pain. He noted that he has experienced severe side effects from all of these medications.

In his Function Report (Tr. 108-36), plaintiff wrote that he lives alone in a house. On an average day, he wakes up, takes medicine, and then, depending on his pain level, does household chores or lies down. He prepares and eats sandwiches and microwavable meals. His shoulder pain makes it difficult for him to dress himself and brush his hair, and he has problems bathing and using the toilet due to his knee pain. He goes outside once a day to get the mail, and goes to the grocery store once per month. Approximately once per week, he socializes and spends time with others. He is no longer able to run, jump, play ball with his son, fish, work on cars, play the guitar, or go out with friends on the weekends.

He stated that his condition affects lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using his hands. He estimated that he can lift a maximum of 20 to 30 pounds, and can walk approximately 100 feet before he needs to rest for 10 to 20 minutes. He sometimes uses a cane and walker to walk or to sit; these aids were prescribed when he was in a car accident in 2001.

### B.  Hearing on July 6, 2011

At the time of the hearing, plaintiff was 34 years old, 5'9" tall, and weighed 256 pounds. Plaintiff explained that his normal weight was 150 to 180 pounds, but his medication caused him to gain weight. He confirmed that he has a high school education, and was previously employed as a forklift driver. This work was "off and on," depending on the season. When he could not find work driving a forklift, he sought other employment and was a cook in a bar for a few months. He ultimately left his job driving forklifts because he could no longer climb on and off the forklift due to the pain in his knees. He also could no longer lift heavy objects because his hands and knees were swollen. He takes only over-the-counter medications, such as Ibuprofen and Tylenol, because he is allergic to the medications his doctors have prescribed.

Plaintiff testified that he has gout flares that cause swelling in his toes, knees, wrists, and fingers. He stated that his hands swell several times per week, and remain swollen for days at a time. When his hands are swollen, he can move his fingers but cannot make a fist. During episodes of extreme swelling, he cannot pick up a pen. He stated that he can no longer play the guitar, because he has difficulty holding the instrument and touching the strings. When plaintiff's knees swell, he is unable to climb a flight of stairs. He can walk to the mailbox and back, but has difficulty bending over, and must use a walker to help him sit on the toilet.

Plaintiff stated that he spends most of his day lying down. His family members come to his home to do his chores. Plaintiff makes his own microwave dinners and sandwiches. His doctors have advised him to change his diet and stop drinking alcohol to prevent gout flares. He stated that he complies with these recommendations for the most part, but has not noticed an improvement in his gout. He still consumes about six alcoholic drinks per month.

In addition to gout, plaintiff testified that he suffers from gallbladder pain. Plaintiff estimated that he could sit upright for half an hour before his gallbladder starts to hurt. Plaintiff also explained that he has pain and a limited range of motion in his shoulder due to injuries sustained in a serious car accident in 2001. His spleen was removed after the same accident. (Tr. 282-307).

Rita Payne, Ph.D., a certified disability management specialist, testified as a vocational expert. The ALJ asked Dr. Payne about the employment opportunities for a hypothetical individual with plaintiff's education, age, and past work experience, who is capable of performing at the sedentary exertion level and is limited to frequent use of both upper extremities for fine manipulation. Dr. Payne testified that such an individual would be unable to perform past work, but could be employed as a dispatcher (571 positions in Missouri and 25,900 positions nationally), a protective/surveillance service monitor (340 positions in Missouri and 17,500 positions nationally), and a call out operator (153 positions in Missouri and 14,000 positions nationally). The ALJ then altered the hypothetical and asked which jobs would be available if that same individual could use his upper extremities for fine manipulation and fingering only occasionally. Dr. Payne responded that such an individual could still be employed as a dispatcher, protective/surveillance service monitor, and a call out operator. Finally, the ALJ asked if that individual, in addition to only occasional use of upper extremities for fingering, had the additional limitation of needing to lie down during breaks. Dr. Payne testified that there was no work such a person could perform. (Tr. 307-313).

### C. Records

On November 13, 2008, plaintiff went to the hospital emergency room with joint pain.  He reported having gout and other undiagnosed arthropathy for years.  His knees and wrists were painful and swollen, and he appeared to be in mild pain.  Plaintiff's sensory and motor skills were intact.  The examining physician diagnosed plaintiff with arthropathy at multiple sites and prescribed Prednisone and Vicodin. (Tr. 207-18).

On April 16, 2010, plaintiff was admitted to the hospital.  His chief complaint was a fever, and he also had bilateral knee swelling and pain.  Orthopedic surgeons aspirated plaintiff's knee joints, and the fluid removed tested positive for uric acid.  An abdominal ultrasound of plaintiff's gallbladder revealed some gallstones (cholelithiasis) as well as sludge, but there was no indication of cholecystitis.[1]  Bilateral knee x-rays were negative, as was a chest x-ray.  Plaintiff was started on steroids, which lessened his pain, and he was given a walker to help him move about his hospital room.

Attending physician Vikram Patney, M.D., wrote that plaintiff had a history of gout, but had not complied with his primary care physician's recommendation to get an MRI scan of his knee because he was uninsured.  Therefore, Dr. Patney contacted social services, and plaintiff was given resources for inexpensive medications including $4.00 prescriptions at Walmart and the grocery store.  Dr. Patney observed that plaintiff was alert, oriented, and not in acute distress, and that plaintiff had edema of both knees, an effusion on the right side, and tenderness at his joint lines.  Plaintiff was discharged on April 19, 2010, with diagnoses of fever, bilateral knee gouty arthritis, chronic daily alcohol abuse, surgical asplenia in 2001 after motor vehicle accident, and asymptomatic gallstones with biliary sludge.  He was again prescribed

---

[1] Cholecystitis is the inflammation of the gallbladder.  See WebMD, available at http://www.webmd.com/digestive-disorders/tc/cholecystitis-overview.

Prednisone and Vicodin.  Dr. Patney instructed plaintiff on how to follow a "gout-friendly" diet, and recommended that he avoid red meats and stop drinking alcohol (plaintiff reported drinking at least one six-pack of beer per day).  Dr. Patney recommended that plaintiff start taking Allopurinol as soon as his acute episode of gout resolved.[2] (Tr. 152-59).

A few weeks later, on May 4, 2010, plaintiff was admitted to the hospital with a fever and abdominal pain.  He complained of gout in his knees and stated that he was unable to walk.  He reported that he drank 2 to 3 beers per day, and that his current medication was Vicodin.  The attending physician, Sarada Sripada, M.D., observed that plaintiff was oriented and exhibited no distress.  Both of his knees were tender, but were not swollen.

Plaintiff underwent several consultative examinations during his hospital stay.  Taquir Ahmed, M.D., was consulted to evaluate plaintiff's abdominal pain.  He concluded that the pain was possibly related to plaintiff's midline scar.  He also observed gallstones, which appeared to be asymptomatic and an incidental finding.  Steven Baak, M.D., from rheumatology, examined plaintiff and determined that he had borderline hyperurecemia and repeated gout attacks.  Dr. Baak planned to add Allopurinol to plaintiff's medications soon, and instructed plaintiff to discontinue drinking.  Ultimately, Dr. Sripada diagnosed plaintiff with gout, fever, and abdominal pain.  Plaintiff was given Mobic,[3] and his knees were injected with steroids.  On May

---

[2] Allopurinol treats gout by reducing the amount of uric acid produced by the body.  See WebMD, avilalbe at http://www.webmd.com/drugs/drug-8610-Allopurinol+Oral.aspx?drugid =8610&drugname=Allopurinol+Oral.

[3] Mobic is a nonsteroidal anti-inflammatory drug that is used to treat arthritis.  See WebMD, available at http://www.webmd.com/drugs/drug-18173-Mobic+Oral.aspx?drugid= 18173&drugname=Mobic+Oral.

6, 2010, plaintiff was feeling better and was discharged with prescriptions for Mobic and Vicodin. He had no activity restrictions upon discharge. (Tr. 248-65)

On June 9, 2010, plaintiff returned to Dr. Baak for a follow-up appointment. Dr. Baak observed that plaintiff had gained weight on steroids, and decided to switch plaintiff's therapy to Uloric,[4] Tramadol, and Ibuprofen due to recent side effects when starting Meloxicam[5] and Allopurinol. Dr. Baak observed that plaintiff's gait was normal. His hands, wrists, elbows, shoulders, feet, and ankles were swollen. (Tr. 266-71).

On January 13, 2011, plaintiff returned to Dr. Baak, complaining of severe bilateral knee pain. However, Dr. Baak observed that plaintiff did not have significant swelling of his knees. Plaintiff told Dr. Baak that he spends his time playing the guitar and watching television. He said that he cannot lie down for long due to chronic issues with his gallbladder. Dr. Baak stopped plaintiff's steroids due to his weight gain, and prescribed Tramadol, Tylenol, and Ibuprofen. (Tr. 273-78).

### III.  The ALJ's Decision

In the decision issued on August 10, 2011, the ALJ made the following findings:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2112 [sic].

2. Plaintiff has not engaged in substantial gainful activity since September 10, 2009, the alleged onset date.

3. Plaintiff has the severe impairments of gout and obesity.

---

[4] Uloric is also used to treat gout by reducing uric acid production. See WebMD, available at http://www.webmd.com/drugs/drug-151872-Uloric+Oral.aspx?drugid=151872&drugname=Uloric+Oral.

[5] Meloxicam is a nonsteroidal anti-inflammatory drug that is used to treat arthritis. See WebMD, available at http://www.webmd.com/drugs/drug-911-Meloxicam+Oral.aspx?drugid=911&drugname=Meloxicam+Oral.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. Plaintiff has the residual functional capacity (RFC) to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).

6. Plaintiff is unable to perform any past relevant work.

7. Plaintiff was born on May 5, 1977 and was 32 years old on the alleged disability onset date.

8. Plaintiff has at least a high school education, and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the plaintiff has transferable job skills.

10. Considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the plaintiff can perform.

11. Plaintiff has not been under a disability, as defined in the Social Security Act, from September 10, 2009, through the date of the decision.

(Tr. 13-21).

## IV. Legal Standards

The Court must affirm the Commissioner's decision "if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled." Long v. Chater, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion." Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002) (quoting Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001)). If, after reviewing the record, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the

Commissioner's findings, the Court must affirm the decision of the Commissioner. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011) (quotations and citation omitted).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). "Each step in the disability determination entails a separate analysis and legal standard." Lacroix v. Barnhart, 465 F.3d 881, 888 n.3 (8th Cir. 2006).

Steps one through three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to steps four and five. Id.

"Prior to step four, the ALJ must assess the claimant's residual functioning capacity ('RFC'), which is the most a claimant can do despite [his] limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, *2. "[A] claimant's RFC [is] based on all relevant evidence, including the medical

records, observations by treating physicians and others, and an individual's own description of his limitations." Moore, 572 F.3d at 523 (quotation and citation omitted).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2002).  This evaluation requires that the ALJ consider "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011) (quotation and citation omitted). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,' the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'"  Id. (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)).  After considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000); Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to his past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to his past relevant work.  Moore, 572 F.3d at 523; accord Dukes v.

Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001). See also 20 C.F.R. § 404.1520(f).

If the claimant is prevented by his impairment from doing any other work, the ALJ will find the claimant to be disabled.

## V.  Discussion

Plaintiff contends that the ALJ erred in determining that plaintiff has the RFC to perform the full range of sedentary work. Plaintiff argues that the RFC was not supported by any medical evidence, and that the ALJ improperly discredited plaintiff's subjective complaints of disabling pain.

### A.   Residual Functional Capacity

"The ALJ bears the primary responsibility for determining a claimant's residual functional capacity based on all relevant evidence, but residual functional capacity remains a medical question." Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) (citing Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001)). Therefore, the RFC must be supported by some medical evidence. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

The medical evidence in this case supports the RFC. Medical records demonstrate that plaintiff suffers from gout, which causes swelling, tenderness, and pain in both of plaintiff's knees. Some of these records suggest that plaintiff has

-11-

difficulty walking.  In April 2010, plaintiff was given a walker to help him ambulate about his hospital room.  Both of plaintiff's knees were swollen, and his joint line was tender.  The fluid in plaintiff's knees tested positive for uric acid, confirming a diagnosis of gout.  However, other medical evidence suggests that plaintiff's gout did not interfere with his ability to walk.  In June 2010, Dr. Baak observed that plaintiff's gait was normal, and in January 2011, Dr. Baak noted that plaintiff did not have significant swelling in his knees, despite plaintiff's complaints of severe pain.  After considering the medical evidence, the ALJ decided to give plaintiff the "great benefit of the doubt" and include the limitation of sedentary work in the RFC.  (Tr. 19).  This limitation is supported by some medical evidence.

The medical evidence does not support additional limitations.  Despite plaintiff's claim that he cannot sit for more than 30 minutes at a time due to pain from his gallstones, Dr. Patney and Dr. Ahmed concluded that plaintiff did not have cholecystitis and that his gallstones were asymptomatic.  Plaintiff also alleges swelling in his hands and wrists, limiting his ability to work with his hands.  However, the medical records do not indicate that plaintiff had any decreased mobility in his hands or coordination problems.  Indeed, no activity restrictions were imposed upon plaintiff when he was discharged from the hospital.  Furthermore, even if the plaintiff was limited to occasional use of his hands for tasks requiring fine manipulation, the vocational expert testified that this limitation would not narrow the pool of employment opportunities available to plaintiff.

The ALJ thoroughly discussed the medical evidence and, based upon that evidence, decided to include a limitation to sedentary work, but exclude all other limitations from the RFC.  Because the ALJ's RFC assessment is supported by some

medical evidence, and substantial evidence in the record as a whole, the Court will not disturb that decision.

### B. The Credibility Determination

The ALJ found that plaintiff's statements regarding the intensity and limiting effects of his conditions were not fully credible. An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the evidence as a whole." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must consider all evidence relating to those complaints, "including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: the claimant's daily activities; the duration, frequency and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." Id. The Court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (internal citations and quotations omitted).

In this case, the ALJ gave several good reasons for discrediting plaintiff's subjective complaints. The ALJ pointed to plaintiff's sporadic treatment history as evidence that plaintiff's claims of disabling pain were exaggerated. This is a proper factor to consider when assessing a claimant's credibility. See Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995) ("While not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem."); see also Social Security Ruling (SSR) 96-7p, at *7 ("… statements may be less than credible if the level or frequency of treatment is inconsistent with the level of complaints….").

Plaintiff argues that he rarely sought medical attention due to his limited financial resources. Although the inability to afford treatment may justify the failure to seek medical attention, Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004), there is no evidence that plaintiff ever actively sought low-cost or free treatment. In fact, the ALJ observed that, in April 2010, Dr. Patney attempted to put plaintiff in touch with social services to help him obtain low-cost prescriptions. See Couch v. Colvin, No. 4:12-cv-4054, 2013 WL 1789598, at *3-4 (W.D. Ark. Apr. 26, 2013) (finding that plaintiff's financial limitations did not excuse her failure to seek treatment when plaintiff did not actively seek low-cost or free treatment). The ALJ also pointed to plaintiff's consumption of at least one six-pack of beer every day as evidence undermining plaintiff's claim that he could not afford the medical treatment his conditions required. See Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999) (finding plaintiff's failure to seek low-cost treatment and failure to forgo smoking three packs of cigarettes a day to help finance treatment undercut his argument that he did not pursue treatment because he could not afford it). The ALJ did not err in finding that plaintiff's infrequent presentation for medical treatment called into question plaintiff's credibility.

The ALJ also considered plaintiff's failure to comply with the recommendations of his physicians. This, too, is a proper factor to consider when assessing credibility. See SSR 96-7p, at *7 ("… statements may be less than credible… if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for the failure."); see also Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."). Doctors repeatedly advised plaintiff to

-14-

stop drinking alcohol.[6] When plaintiff presented at the emergency room in April 2010, he reported drinking at least a six-pack per day. In May 2010, he stated that he drank two to three beers per day. At the hearing, plaintiff testified he has "maybe six" alcoholic drinks per month. The ALJ reasonably concluded that plaintiff's failure to comply with treatment undermines plaintiff's credibility.

The ALJ also noted that the medical records do not support plaintiff's claims of severe pain. Instead, those records show that plaintiff did not exhibit objective "pain behaviors," such as abnormal breathing, uncomfortable movement, elevated blood pressure, or abnormal mood and affect. Treatment notes from April 16, 2010 and May 4, 2010 state that plaintiff was oriented and did not show signs of acute distress. The ALJ also remarked on plaintiff's sporadic work history, which the Eighth Circuit has held "may indicate a lack of motivation to work rather than a lack of ability," and may negatively impact plaintiff's credibility. Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001) (citing Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993)). The ALJ then considered plaintiff's inconsistent statements; for example, plaintiff told the ALJ he could no longer play guitar, but told Dr. Baak that he could. "The ALJ may discredit a claimant based on inconsistencies in the evidence." Partee v. Astrue, 638 F.3d 860, 865 (2011).

Finally, the ALJ noted that plaintiff's failure to take any prescription medications suggests that plaintiff's gout is not disabling as alleged. "Conservative treatment of pain through over-the-counter medication and limited use of prescription medication can be inconsistent with a claimant's allegations of disabling pain." Sangel v. Astrue, 785 F.Supp.2d 757, 776-77 (N.D. Iowa 2011) (citing Moore v. Astrue, 572 F.3d 520,

---

[6] Gout flares are brought on by the ingestion of alcohol. See Arthritis Health Center: Gout, WebMD, available at http://arthritis.webmd.com/tc/gout-cause.

524-25 (8th Cir. 2009)). Plaintiff claims that he is allergic to his prescribed medications, and therefore his failure to take those medications is justified. Plaintiff testified that Mobic made his feet numb, Allopurinol caused his throat to swell shut, Uloric gave him a rash, and steroids caused rapid and severe weight gain. (Tr. 302). Considering plaintiff's alleged side effects, the Court cannot say that plaintiff's failure to take prescription medications, alone, detracts significantly from his credibility. However, the ALJ's credibility assessment is amply supported by the other evidence on the record.

The ALJ considered the appropriate factors before discounting plaintiff's subjective complaints, and reached a credibility determination that is supported by substantial evidence. Accordingly, the Court will defer to the ALJ's adverse credibility determination.

## VI.  Conclusion

For the reasons discussed above, the Court finds that the Commissioner's decision is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by plaintiff in his brief in support of complaint [#16] is **denied**.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

                                                                                          _____
                                                                                          CAROL E. JACKSON
                                                                                          UNITED STATES DISTRICT JUDGE

Dated this 8th day of January, 2014.